or permanent, nor did he file his claim petition until January 28, 1952, more than a month after his separation from employment.

The determination and judgment of the County Court is reversed.

GENEVIEVE T. WOODHOUSE, PLAINTIFF-RESPONDENT, v. RICHARD P. WOODHOUSE, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 19, 1953—Decided October 27, 1953.

Before Judges EASTWOOD, JAYNE and FRANCIS.

*Mr. John J. Connell* argued the cause for appellant.

*Mr. Charles H. Roemer* argued the cause for respondent.

The opinion of the court was delivered by

JAYNE, J. A. D. A summary of the significant antecedent events will serve to disclose the essence of the alleged cause of action here under review.

The parties were married on September 3, 1939. Discord caused them to separate on July 1, 1946. In 1948 they became persuaded that a reconciliation and the resumption of marital cohabitation were not achievable. Mrs. Woodhouse contemplated the institution of an action to obtain a dissolution of the marriage.

In pursuance of a mutual desire "to settle all questions as to their property rights between themselves," the parties caused to be composed an agreement in writing which they executed on February 4, 1948. Mrs. Woodhouse thereafter prosecuted a suit in the Second Judicial District Court of the State of Nevada in the County of Washoe in which on March 26, 1948 she was granted a final and absolute divorce by a decree which also adjudged "that the agreement of the parties, dated February 4, 1948 is adopted, ratified and approved and made a part of this decree by reference thereto."

By the terms of the agreement the present defendant covenanted, *inter alia,* to pay to the plaintiff commencing on March 1, 1948 and thereafter during her lifetime or until she remarried, the sum of $50 on the first day of each succeeding week and the additional sum of $50 on the first day of each calendar month.

The plaintiff instituted the present action on June 22, 1951 to recover from the defendant an alleged arrearage of payments owing to her under the decree of the Nevada court. The ensuing progression of the case is revealed by the decisions reported in 20 *N. J. Super.* 229 (*App. Div.* 1952), and 11 *N. J.* 225 (1953).

It is sufficient for immediate purposes to recognize that it is now the law of this case that the Nevada decree is valid and entitled to be accorded full faith and credit, and that the action was remanded to the trial court "solely for a proper determination of the defendant's indebtedness under the Nevada decree." The judgment challenged by this appeal determined the indebtedness as of March 1, 1953 to be $8,047.63.

The defendant's only criticism of the judgment is that the court failed in the calculation of the indebtedness to credit thereon the income realized by the plaintiff from sources other than from the defendant. That contention transports particular attention to paragraph 6 of the agreement embodied in the Nevada decree. It reads as follows:

"The second party (the present plaintiff) does by these presents agree, in the event that she in any year or years during the life of this agreement should realize any income from any source whatsoever other than from the first party hereto, she will accept a reduction in the periodic payments of money heretofore agreed by the first party to be paid to the second party—said reduction to be in direct proportion to the sum of said income realized from any source or sources other than the first party."

Noticeably the paragraph specifies *"any income from any source whatsoever* other than from the first party hereto," and that the "reduction to be in direct proportion to the sum of said income realized *from any source or sources other*

*than the first party."* The repetitious characterization of the income in the one relatively short paragraph denotes a conscious regard for precision and exactness of expression.

The trial judge resolved that the salary or wages in fact earned by the plaintiff by means of her own personal exertions "were not to be construed as 'income'" within the import of the decree and accordingly declined to recognize such earnings as proper deductions from the defendant's indebtedness.

█ We think that the explicit, unequivocal and positive phraseology employed in the composition of the pertinent paragraph of the agreement does not indulge such a modified interpretation. In its unqualified acceptation, income denotes a gain or benefit, usually understood to be monetary and recurrent, which proceeds from labor, business, or property. It is ordinarily comprehended to embrace salary, fees and emoluments derived from personal services. Indeed, the descriptive expression "income from any source whatsoever" is neither unique nor vague in the interpretation of our tax collectors.

The agreement before us incorporated in the Nevada decree seems clearly to exhibit the contemplation that if in any year the plaintiff should choose to engage in some remunerative employment, her monetary receipts from that source should reduce *pro tanto* the amount of the defendant's alimony obligation.

The implication is equally manifest that the agreement and the ensuing decree were intended to provide a specified measure of security for the future support of the plaintiff.

Counsel for the plaintiff endeavors to sustain the propriety of the judgment by the introduction of the inferential premise that the defendant purposefully refrained from continuing the payments of alimony advantageously to compel the plaintiff to seek and pursue some employment, the pecuniary income from which would materially reduce or completely offset his alimony obligations. Viewed in the illumination of the defendant's persistent efforts to escape his responsibilities under the decree, there would appear to be some

cause to suspect the purity of his intentions. We note that although the defendant remarried 41 days after the entry of the Nevada decree, he interposed as his defense to this action that the decree in its entirety was collusively and fraudulently obtained and is therefore void. In view of his own conduct, his extraordinary defenses were deemed to be without merit by the appellate courts in the two decisions to which previous reference has been made.

■ However, the supposititious premise proposed by counsel for the plaintiff has no evidentiary support in the record before us. The issue remanded to the trial court was submitted for determination on an agreed statement of facts in which the terms of the decree, the payments of alimony by the defendant, and the earnings of the plaintiff were stipulated and in which in resemblance to a pretrial order the contentions of the respective parties were disclosed as follows:

"Defendant therefore argues that the moneys earned by the plaintiff in 1951 and 1952 should be applied in reduction of his obligation. On the other hand plaintiff's position is that since she was compelled to go to work to support herself by reason of defendant's failure to make the alimony payments ordered, he should not be permitted to profit by such failure to comply with the order of the court."

There is neither a concession contained in the statement of facts nor any observable proof in the record that the defendant willfully and purposefully refrained from discharging his obligations under the decree cunningly and craftily to avail himself of the provisions of paragraph 6 of the judicially approved agreement.

This is not a suit for the allowance of alimony in which the court is free to respond to the equities. It is an action to recover an indebtedness due by virtue of the particular decree of the Nevada court which, in consequence of the preceding adjudications in the Appellate Division and Supreme Court, may still be interpreted but not remodeled in this jurisdiction.

In the existing state of the record we feel obliged to reverse the present judgment. In doing so, we would ordinarily

direct the entry of a final judgment in favor of the plaintiff and against the defendant in the amount of his liabilities under the agreement in excess of the legitimate credits, but we are unable accurately to do so because of the lack of the requisite detailed information.

We remand the action to the end that the trial court with recognition of the conclusions herein expressed shall determine anew the defendant's indebtedness under the Nevada decree. No costs.